■ RANDALL T. SIMS et al., Plaintiffs, v DARWOOD MANAGEMENT, INC., et al., Defendants. (Action No. 1.) E. ROBERT QUASMAN, Appellant-Respondent, v RANDALL T. SIMS et al., Respondents-Appellants, and 201 E. 77 OWNERS CORP. et al., Respondents. (Action No. 2.)—Order of the Supreme Court, New York County (William P. McCooe, J.), entered August 24, 1987, which, *inter alia,* granted the motion of defendants 201 E. 77 Owners Corp. and Darwood Management, Inc. for an order dismissing the claims against them, and denied the cross motion by defendants Randall and Donna Sims for an order granting partial summary judgment dismissing the first cause of action in action No. 2, is unanimously modified, on the law, solely to the extent of granting the cross motion by defendants Randall and Donna Sims for partial summary judgment, and otherwise affirmed, without costs or disbursements.

Defendants Randall and Donna Sims owned the shares and held the proprietary leases to apartments 9D and 9E at 201 East 77th Street. While the Simses occupied apartment 9D, they were designated by the sponsor as "holders of unsold

shares" with respect to apartment 9E, which was occupied by a rent-stabilized tenant. Paragraph 38 (a) of the proprietary lease provides, in pertinent part, with respect to unsold shares: "[A]ll shares which are Unsold Shares retain their character as such (regardless of transfer) until (1) such shares become the property of a purchaser for actual occupancy (by himself or a member of his family) of the apartment to which such shares are allocated, or (2) the holder of such shares (or a member of his family) becomes an actual occupant of the apartment."

Paragraph 38 (b) provides: "(b) Neither the subletting of the apartment nor the assignment of this lease, by the Lessee who is the holder of the block of Unsold Shares allocated thereto (or any financing transaction in connection therewith), shall require the consents of the Directors or shareholders, as provided in Paragraphs 15 and 16, but the consent only of the Lessor's then Managing Agent, provided the same shall not be unreasonably withheld, shall be sufficient for approval and the taking effect of such subletting or assignment and of the transfer of such shares in the case of an assignment. At such holder's option in lieu of obtaining such consent of the Managing Agent, the consent of the Directors will suffice and such consent of the Board of Directors shall not be unreasonably withheld (see Par. 16 (a) (vi) above in this regard)."

In August of 1983, the Simses contracted to sell both apartment 9D and apartment 9E to plaintiff E. Robert Quasman. The sale of apartment 9D to Quasman took place in 1983 and he moved into that apartment.

The contract of sale set the closing date for apartment 9E over two years in the future, for January 3, 1986, "but not later than January 17, 1986, and if purchaser fails to close by that date then he shall pay a late closing premium of $1,000.00". The contract of sale further provided: "6. This sale is subject to the approval of the managing agent of the Corporation as provided in the Lease or the corporate by-laws. Purchaser agrees to submit to * * * the managing agent such further references and information as are commonly asked for in such transactions. * * * Seller may, but shall not be required to, take any steps in connection with the procurement of such approval * * *. In the event of such refusal, this agreement shall thereby be deemed cancelled. If approval or refusal be not received by Seller or Purchaser at or before the closing, either may by notice given to the other on or before the date fixed in paragraph 10 for the closing, adjourn the closing for a period not to exceed thirty (30) days for the

purpose of obtaining such approval, and if the party who has adjourned the closing is unable to obtain approval of this sale within said period of time, this agreement shall ipso facto be deemed cancelled. If this agreement is cancelled as provided in this Paragraph, all sums theretofore paid to Seller by Purchaser on account of the purchase price shall be returned with interest to Purchaser and both parties shall be relieved from all further liability hereunder."

In determining whether to consent to the transfer of the shares from the Simses to Quasman, the managing agent concluded that the co-op board (of which Quasman was a member) had a right to know whether Quasman, the purchaser of unsold shares, was purchasing them for investment or if he intended to occupy the apartment. If the latter were the case, the board would have the right to require approval of any subsequent sale by that purchaser. The managing agent found that in this case the board's concerns were particularly acute because Quasman resided in the apartment adjacent to apartment 9E and Quasman may have intended to break down the walls and combine 9E with his apartment when 9E became vacant. The managing agent concluded that Quasman's refusal to declare whether he intended to hold the shares as a holder of unsold shares or an occupant was unreasonable and, therefore, decided not to consent to the transfer to Quasman.

When the closing did not take place, the Simses caused a summons with notice to be served on Darwood Management, Inc. (the managing agent), Leo Frantzman and 201 E. 77 Owners Corp. (the president of the co-op and the co-op corporation), thus commencing action No. 1. No complaint was filed in this action, no index number purchased, and the Simses did nothing further to prosecute it.

Since Quasman had not resolved the differences with the co-op defendants, on April 18, 1986, Mr. Sims sent a letter to him stating that the contract was now canceled and returning the payments which Quasman had tendered pursuant to the contract. Quasman's attorneys returned Mr. Sims' check to him and told Sims that they continued to consider the contract in full force and effect.

In September 1986, Quasman began action No. 2 against the Simses, the cooperative corporation and the managing agent. Quasman sought a judgment directing the Simses to specifically perform the contract of sale. In addition, Quasman asked for a judgment declaring that the managing agent and the co-

op "specifically recognize [Quasman] as the holder of unsold shares". Quasman also sought money damages with respect to defendants' failure to close on the contract.

The co-op and managing agent moved for consolidation of the Simses' action with the Quasman action and summary judgment directing specific performance, on the ground that the movants had dropped all objections to specific performance of the contract, and, further, dismissing all claims for compensatory and punitive damages.

The Simses cross-moved for partial summary judgment against plaintiff on the specific performance claim in the first cause of action. They further asserted that the consolidation issue was moot since they had voluntarily discontinued their action.

Quasman cross-moved for summary judgment in his favor, directing the Simses to specifically perform the contract, directing the co-op and the managing agent to recognize Quasman as the holder of unsold shares, and directing all defendants to deliver all necessary documents required to transfer the stock and the lease.

The IAS court dismissed the claims against the co-op and the managing agent for compensatory and punitive damages, denied consolidation as moot in view of the discontinuance, and denied the balance of the requested relief.

Plaintiff asserts that since the apartment 9E contract provided that the sale would be subject to the approval of the managing agent, as provided in the proprietary lease, such consent was unreasonably withheld. However, the provision that consent shall not be unreasonably withheld is, as noted, contained in the proprietary lease, which is a contract between the Simses and the co-op, a contract to which plaintiff is not a party. Plaintiff is also not a third-party beneficiary to that contract since there is no intent shown to benefit a third party, and an incidental beneficiary has no right to enforce a contract *(Port Chester Elec. Constr. Corp. v Atlas,* 40 NY2d 652).

Paragraph 38 (a) of the proprietary lease, which defines unsold shares, at most confers a benefit on the holder of such shares. There is nothing in this provision which suggests an intent to benefit prospective purchasers. Paragraph 38 (b), which provides that the managing agent's consent to the assignment of unsold shares is required and that such consent shall not be unreasonably withheld, indicates an intention to benefit the *holder* of such shares by facilitating assignment of

the lease, but nothing in this provision suggests an intent to benefit third-party assignees. Likewise, plaintiff is not entitled to monetary damages against the managing agent and co-op because of any unreasonable withholding of consent to the transfer. Plaintiff's reliance on *Arlu Assocs. v Rosner* (14 AD2d 272, *affd* 12 NY2d 693) is misplaced. There, this court concluded that a tenant could bring an action for monetary damages for breach of contract against a landlord for unreasonably withholding consent to assignment of a lease. In that case, however, it was the tenant who was seeking damages, not the proposed assignee.

The IAS court erred, however, in denying the Simses' cross motion for partial summary judgment dismissing plaintiff's claim for specific performance of the contract. The provision in paragraph 10 of the contract, setting the closing date for January 3, 1986 but not later than January 17, 1986, and providing for a late closing premium if closing did not take place by the latter date, suggests that the parties did not consider time to be of the essence. Thus, the failure to close by a certain date was not necessarily fatal to the plaintiff's right to purchase under this provision. However, pursuant to paragraph 6 of the contract, within 30 days of the closing date, if adjourned, the agreement would ipso facto be deemed canceled if approval was not obtained during that period. This 30-day grace period extending the time for obtaining approval is clear and unambiguous and the consequence is likewise clear in the case of noncompliance—termination of the contract *(see, Weisner v 791 Park Ave. Corp.,* 6 NY2d 426, 434).

Plaintiff's contention and the IAS court's suggestion that the Sims defendants waived their rights pursuant to paragraph 6, by commencing the lawsuit against the co-op and managing agent, has no merit. Even if the commencement of action No. 1 is regarded as an indication that the Simses continued to view the contract as being in force, the letter of April 18, 1986, stating that the contract was canceled, clearly manifested a contrary intention. Even if the 30-day period set forth in paragraph 6 of the contract was deemed to run from April 18, 1986, plaintiff did not obtain approval of the sale within 30 days of that date, since the earliest date on which plaintiff indicated the co-op corporation's readiness to close under the contract was June 13, 1986, when plaintiff's attorneys, in a letter of that date, notified the Simses that the cooperative corporation was now ready to close. Concur—Kupferman, J. P., Carro, Asch, Rosenberger and Wallach, JJ.